Our next case for argument is Dancy v. Union Pacific. Good morning, Your Honors. Adam Hanson on behalf of Appellant Kelly Dancy. And may it please the Court. This case concerns Union Pacific's refusal to provide any reasonable accommodation to its longstanding employee, Mr. Dancy, who suffers from AIDS and AIDS-related cancer. At the outset, I think it's important to clarify what Mr. Dancy was asking for. Whenever we hear about an employee who wants to take some time off of work, I think we naturally think of someone who works a 40-hour-a-week, regularly scheduled shift. Such an employee, of course, is only on duty 40 hours. He or she still has 128 non-working hours to do everything else in their life, including visit the doctor. This case could not be further from that prototypical scenario. Union Pacific is laying claim to Mr. Dancy's time 24 hours a day, seven days a week, 365 days a year. So in a case like this where Mr. Dancy is asking for a limited amount of time to see the doctor, we're really talking about just finding some time, any time in his life, in order for him to attend these important medical appointments. The District Court committed a couple of overlapping errors on its reasonable accommodations analysis. And as this Court is aware, there are really two sides to the reasonable accommodations coin. The first is what we might think of as a more substantive element. What was the request? Was it reasonable? Was the denial of the request reasonable, whether it was a ramp or a modified desk or something like that? But there's also a procedural component, which asks whether the employer unreasonably inhibited the search for a reasonable accommodation by failing to... Council, I'm getting static and I think it's perhaps off of your mic that could be too close to you. There you go. Try that. Is that better? That is better. Okay, Judge, if you hear it again, let me know and I can switch to my computer audio. I'm happy to do that. So picking up where I left off, what the District Court held on the reasonable accommodation claim is that Mr. Dancy had impermissibly requested an unlimited amount of time off. That conclusion was both factually and legally flawed. Factually, the District Court unreasonably constrained its analysis to a single document, essentially analogizing this case to a breach of contract case, where the parole evidence rule might come into play. That's not how it works under the ADA. You look at all relevant evidence of the request. And when you look at the other evidence in the record here, including emails and voicemails, two things are very clear. One, Mr. Dancy was only asking for five days off a month, again, in this total denominator of time. And secondly, Mr. Dancy, let me ask you about that and then I'll let you continue. You say he was only asking for five days off. The request, at least on paper, was five days off, plus as much other times as he needed under in his discretion, you know, depending on how he was feeling and such. So that's not five days. That's, I mean, reasonably construed as being more than five days. So where did he limit this and say, I'll give it up for five days only? Sure. Well, it was limited through conversations principally, with, for example, Terry Owens, who's Union Pacific's Director of Disability Management. There's a voicemail, there's an email that talks about these things. But let me make the second point, which is... Well, tell me what they say, though. I mean, what do they say? What's the voicemail say? Does it say, I'll give up on the discretionary stuff, I only want five days? Well, he never... I think this leads to the direct... I do want to answer this question based on the facts of the case. What happened next is really important, because Mr. Danzy got a call from Union Pacific's Disability Management Group and said, congratulations, your request is granted. So Mr. Danzy, you know, was never put in a position to answer the question that you just posed, Judge Carson. I mean, he was completely head faked here, because had somebody said, this is problematic, there is this appears to be this fine print in this one form that suggests that it could be five days, but it is not. So what do you say? Can we specifically limit it to five days? He would have said, absolutely, let's limit it to five days. This is a summary judgment, right, on this issue? Yes, it is. Cross motions. We at this point, in your view, we don't know what time he asked for. We don't know what the Union Pacific said in response to what he asked for. And maybe my curiosity is exactly what is the leave time policy of Union Pacific? How much time can a person get off in his position? Yes, so it is, it's a cross motion for summary judgment case. And that that's really the last part of your question is, is really a crucial part of the analysis, because no one is claiming that Union Pacific's own policy requires someone to literally be available 24, 7365. The problem is, Union Pacific's policy does not say, with extreme specificity, how much time an employee can, it's called laying off, right? This is essentially indicating unavailability for duty. But the policy says three things that all cut in Mr. Gansey's favor. Number one, it says that reasonable layoffs are permitted. Number two, it says that layoffs are permitted for bona fide illnesses as long as they're documented. And number three, the policy says crystal clear that employees can use their paid time off. Mr. Gansey had been working there for 10 years. So he had accrued enough paid time off almost a month's worth to cover all of these appointments. And so you know, this isn't a breach of contract case, this is an ADA case, but the two are very related. When an employer is refusing to follow even its own policies with respect to leave, it's pretty difficult for the employer to turn around and say that the request is unreasonable. So at bottom, do we know exactly what accommodation he wanted? I mean, it's back to Judge Carson's question. Was he asking for five days? Was he asking for an unlimited amount of time off? He was asking for five days. And if I could point the panel to one other thing in the record, I mean, Mr. Gansey was terminated and ultimately reinstated under his CBA. And the under that proceeding, they reached an accommodation of three days per today at three days per month. So this idea that no accommodation was possible, is just totally not supported by the record. And this really dovetails. So if he asked for accommodation, which I guess we assume that was there any interaction, any discussion? You know, under our case, Smith v. Midland Brake, that's required, of course. Was there any discussion about accommodation and what other positions or accommodations could be made? Here's the discussion in a nutshell. Mr. Gansey makes a request. Ms. Owens says, please have your doctor fill out this form. He does that. She says, well, there's a there's an issue with this one piece, it's not super relevant. Have your doctor fill it out a second time. He does that. And then two weeks later, Mr. Gansey receives a call and says, congratulations, your request for accommodation has been granted. And that's from Kim Floyd. It's a telephone call. So it's not recorded. But the date, the time, the person are all identified in the record. And then essentially, what happens after that is this bizarro scenario where the company headquarters in Omaha is doing one thing and the local supervisors on the ground are doing something completely different. They are doing this progression of progressive discipline. And it becomes clear to Mr. Gansey that they're trying to terminate him. And so he eventually calls back, you know, Ms. Owens, the person in charge in Omaha and says, what is going on here? And she just goes limp at that point and says, I'm not going to get involved. So that's the trajectory. And the ultimate point I wanted to make is, this is, I think, an even stronger failure to participate in the reasonable in the interactive process case than it is on the substance. Because it's one thing if an employee says, and this goes directly to Judge Carson's question. No, this is it. I'm standing on this request. It's this way or the highway. At that point, the only thing for the court to determine or the jury to determine is whether the request is substantively reasonable. But for an employer to say, yes, your request is granted as written, and then turn around and fire the employee and say, well, we've identified a, you know, a technical violation with your request and use that as a shield and litigation. It really completely undermines both the text and the purpose of the Americans with Disabilities Act. It gives Union Pacific an advantage that an employer who participates in good faith would have would never have received. And of course, this isn't a mere process violation. It's just a way in which the process breaks down. It inhibits the identification of what basically everyone agrees were a number of accommodations that were available. On what basis did the district court reject the argument you just made, saying that he was granted the request and then the imprecise request, right? So the district court's order was read into the record. The discussion on this part was extremely truncated. So to my memory, and I have to go back and look at the record, but to my memory, the district court just said, no reasonable accommodations possible. And of course, this is a second prong Judge hearts. There is sort of a no harm, no foul rule if the company fails in its duties under the interactive process, but ultimately can show in not only was whatever request was made, not reasonable, but no reasonable accommodation was even possible in the total universe, then the employer wins. So it seems like that's what the district court said. And other than one sentence in its response brief in this litigation, I mean, Union Pacific, it's basically an indefensible point, right? I mean, he's working there now. Under the same accommodation, he worked there for 10 years, he could have been transferred to another position. I mean, the idea that there's simply no possible. I thought he admitted that there were no other positions that he would be qualified that he could handle. No, no, no position. He didn't. I mean, that the testimony was a little muddled, not just from him, but from his own as well. First of all, she couldn't even remember if she had actually had the conversation. So she was sort of hypothesizing. Yeah, I am asking what he said. I thought there are no other positions that he could fill. I think he he I don't have the text in front of me. So I'm going to have to paraphrase and I'll just stand on the record. Of course, it speaks for itself. But I think he understood that there were no other positions maybe at his precise location in Utah that were, you know, on call conductor positions. Of course, he was is it up? Is it up to the plaintiff here seeking ADA accommodation to come up with potential positions that would accommodate him? Well, it's partly the plaintiff's. It's partly the plaintiff's job, but it's partly the employer's job. I mean, it's this. There's no real technical way to reduce down this interactive process. What it boils down to is, look, there's information that is uniquely in the purview of the plaintiff. There's information that's uniquely in the purview of the employer, and they need to sit down at the table. And we've all seen lots of cases where, you know, maybe there's a good faith debate about the ultimate result, but you look at it and you say both sides did their job. You know, they negotiated in good faith. They explained themselves. If a request was rejected, it was explained. It was put in writing. You know, frankly, this is the first case I've ever seen where a request was granted and then, you know, I guess secretly denied and then the employer turned around to terminate the employee. And that's just simply not permitted under the American Disabilities Act. Briefly, with respect to the relief we're seeking, and then I do want to touch on this jury question issue. You know, we do believe we are entitled to judgment as a matter of law on the Americans with Disabilities Act. But of course, if this court disagrees, the middle option is to have that issue tried if the court believes that there are questions of fact. On the FMLA issue, if I may, this case was tried on the theory that the company terminated Mr. Danzy essentially to avoid him requalifying for FMLA leave. And the jury asked a question, which was a very intelligent question, essentially whether Mr. Danzy even had rights to exercise under the FMLA. And I hadn't researched this. I had to look it up myself. It turns out the answer is yes. The problem was that this was a predicate legal question that had already been resolved by the court, and was not the specific factual question that the jury was asked to decide. So in other words, the jury was asked to decide whether the termination of Mr. Danzy was motivated in any way by the exercise of his FMLA rights. What the jury needed to know and what the original jury instructions didn't say, what the jury wanted to know, was, does the FMLA just protect people who have it, who want to use it, or does the FMLA also protect people who are trying to gain FMLA rights? And the law is clear. It covers the latter just as much as the former. And so the analogy we make in our reply brief is it would be just like a breach of contract case where the jury is just supposed to decide consideration, but it asks a question about offer or acceptance. It's very normal. The jury instructions don't necessarily have to negate or explain away everything the jury is not required to decide. But once the jury puts that in issue and asks what is in this case was a very intelligent question about a predicate matter that was not the jury's to decide, then it is up to the judge to resolve it. What if the jury is astute and comes up with a new theory of liability that's permissible under the statute, but it wasn't, it wasn't presented, it wasn't argued by the plaintiff. It's hardly fair to a defendant to allow a new theory to be the basis of a verdict. When that happens, the jury may be interested in it. But that can't be a basis of a verdict, can it? I agree wholeheartedly. But that's it. That's different from what we have here. This wasn't about a unique theory of liability. This was the theory of liability. The jury was only asking about a predicate legal question about what does it mean to have the protections of the FMLA. And so this was the heartland of the theory, it was just something that wasn't in the jury's purview. I see that I'm out of time. So I will ask the court to reverse and remand, as I've asked, unless the court has any further questions. All right, I thank the court for its time. Thank you. Right here from the Appalachee. Thank you, Your Honor. Chris Hedekin on behalf of the Appalachee Union Pacific Railroad. I'm pleased before to be before the court here today. Judge Shelby correctly ruled that Union Pacific was entitled to summary judgment on the accommodation failure to accommodate claim. Given the request for an unlimited amount of time off for a job that the plaintiff admitted required physical attendance, there's few jobs that are more clearly require a conductor because it's a legal and the requirements as I understood, as far as attendance, allowed for frequent layoffs, and we don't have a definition of what frequent means. Do we? Judge there, there's not a specific definition of frequent layoff. The policy that exists outlines for these individuals, and it's consistent with what's agreed with the union is applied to Mr. Dancy the same way it was applied to everyone else. He does have the opportunity to have layoffs. There are a certain amount of layoffs that are allowed. There's also the opportunity even if you don't have those available to ask for it. And if the needs of the railroad are met, they will allow you to take that time off. The problem is, is that if they don't have a sufficient number of conductors to be able to cover that particular locomotive, they will need to deny you that obligation or that request. We did put evidence within the record for Judge Shelby of others who are held to the same standard given absences for the same number of absences in some cases for even fewer absences than Mr. Dancy had. Had the plaintiff been accommodated in the past to permit him to attend medical appointments? Not under the ADA. He had prior to his first termination, Judge, he had been on FMLA, which did provide the intermittent obligation or intermittent right to leave. And he had used that for a number of years once he lost his position due to the safety violation. And so the trains ran in spite of that, right? When he had that opportunity under the FMLA? It's true, Judge. We ran our trains as best we could. It doesn't change both what he testified to and what others testified to, which is that there are many circumstances in which those trains are delayed because you have no conductors and no locomotive engineers available to be able to run those trains. Well, was he asking, in your view, for an indefinite amount of time off? No question about it, Your Honor, because there was no specific limitation placed upon the term of his limitation. It never indicated how long he would need it for his impairment. And the fact is... Did anyone ask him? Ask him how long he would need it? Yeah, that's right within the form. The information that was placed within there, though, was that he would need five days off a week. Any personal interaction aside from the form? I apologize, Judge, I didn't hear you. Any personal interaction from the railroad with the plaintiff beyond the information that's on the face of the form? Yes, Terry Owens, who's an individual within a position that was specifically for the purpose of trying to navigate the ADA as well as other medical employment issues, worked with him and spoke with him on that particular document. Now, the opposing counsel said that Terry actually approved his request or somebody in the local office. And if that was the case, it would be a little disconcerting to then be fired after you're granted the request. Correct. And Judge, that fact is, in my humble opinion, a manufactured argument to forestall summary judgment. The complaint that was filed by Mr. Dancy in both paragraph 16 and 23 said his accommodation was denied. He never alleged within his complaint that his accommodation had been granted. In his summary judgment, his offensive filing, which was filed two days before ours, he never said in his undisputed facts that an accommodation had been granted to him and that he would have looked for other positions. He never made that argument at all. He only raised this argument in an affidavit, which contradicted his deposition testimony in opposition to our motion for summary judgment, which the court had no obligation on summary judgment to credit, particularly given the judicial admission within the complaint that his accommodation had been denied. Going back to your question, Judge Hart, on... Yes, that procedural question. I think our law is that you can submit an affidavit that's contrary to your deposition, and it has to be credited for summary judgment purposes if you why you didn't mention it earlier. Was there any explanation in the affidavit of, I forgot about this or anything like that? None whatsoever, Your Honor. There was no such explanation and nor could there be because this was not the theory on which this case was advanced. And this is why Judge Shelby granted summary judgment. He said specifically, and I was on the call with him when he announced and read his opinion that was transcribed into the record, he said specifically, look, you testified that you knew about all the positions and that no other position was available for you that would have been suitable to accommodate your position. In addition, he said, you've had substantial time during discovery to present evidence of what positions would have been available if you couldn't, you know, given that this accommodation could not be granted. And you did not put any such evidence into the record. There is no such evidence in the record, to that effect that there were any other jobs back at the time that summary judgment was ruled upon as is required by this court's on bank decisions. Is that a responsibility of the plaintiff to come up with the positions and tell the employer, hey, I have researched your books to find out how many positions you have and what I would be qualified to do. Is that the plaintiff's responsibility? In the context of the interactive process, they have a shared responsibility to identify effective accommodations, Judge, that's different than the summary judgment posture. What I'm pointing out is that once if their theory was, hey, I was told I had an accommodation. So I didn't look for anything else. If that was in fact the real theory, then they would have gathered discovery from us that showed that there were positions available, marshaled their evidence to substantiate and meet their burden of proving that we violated the ADA and failing to provide an accommodation. They never asked for that information. They never sought it. The council never did, because that was not their theory. And that evidence was not in the record. And Judge Shelby then can't tell me what you think their theory was. Their theory was that they felt that we we were just simply unreasonable and denying the accommodation that the accommodation was not unreasonable and that we could not substantiate an undue hardship. Most of their summary judgment briefing is devoted to this isn't an undue hardship or we can't meet that burden of proof. And so that that's where we're at in this case is Judge Shelby said, hey, you you have not shown any evidence here of where this accommodation was possible, what positions, the assertion that two years after the fact, when he was reinstated yet again by the PLB, that he was then accommodated is also not relevant record evidence because it only comes to light in the context of a request for reconsideration, which the court denied. And in addition, well, but doesn't that tell us that there was a position that he could hold and could be accommodated? It doesn't judge because the accommodation request is now two years later, the condition, there's no evidence of position that he's now occupying was not in existence before. There was no evidence that that position existed or that such position was available. Plus, the accommodation request two years later is different. It's not the same request that was made. And so again, there was nothing. How is it different? How is what different? His accommodation? He asked for less time. He's asked for three my recollection judge and is that he's asking for three days and he submitted that he submitted it twice. Keep in mind that in this case, this original request, Mr. Dancy's testimony was that he drafted the accommodation request both times. He gave it to his doctor, his doctor signed it without change. So this was exactly what he knew he needed. And when he said, hey, I might need additional time off without notice. Those are Kelly Dancy's And then his FMLA request, which he subsequently submits, is also prepared by him. It says essentially the same thing, but has a little more information on it. So the bottom line is, is Judge Shelby made the correct determination here. This was not a plausible claim for relief. That has not been changed. That standard has not been changed by XB Stolt as asserted by Dancy's counsel. In fact, it was applied. Subsequently, that standard and put DOV Mnuchin, a subsequent case. And he said, this wasn't a plausible claim for relief. And in addition, there's no failure of the interactive process because there's no record evidence that there was another job that that would have been able to accommodate you had that evidence. Well, was this, is that something that the employer presented to the plaintiff, these other jobs? At the time, Judge, we denied. So this is where, on our record, we denied his summary judge, or we denied his accommodation request just to see concedes in his complaint. So we denied it. And there was not a subsequent follow up from him. There was testimony from Terry Owen that she did have an inquiry of him about whether he would be interested in other positions, but he did not pursue that. Now that there's a conflict in in what's being presented now given that affidavit. But again, on this record, well, did she express to him what other positions? She discussed talking with him about pursuing other positions, but he said he was not interested. The same way he testified to me, when I took his deposition, and he said there were no, I asked him, why did you pursue any other positions? Because as union members, independent of the ADA, and I'm not suggesting to you, Judge, that that shifts the burden on him to take care of, but it is a relevant fact in the union, you can just look and see what jobs are available. And if you think they're going to work for you, you go ahead and bid for them. But he told me nothing else would work for me. I didn't want anything else. And I should get this. And so when we look at the record that Judge Shelby had, the opportunity of Mr. Dancy's to prepare and ask for and submit evidence of these other positions. It's it's a record that is fully supports the summary. The plaintiff here also says that that the employer refused to let him use his paid leave days. Is that true? That's not true, Judge. But what he's referring to is what I discussed a little earlier, which is, you can ask for time off, which will be paid. And if, if we do not, our needs do not require you at the railroad that particular day, then you can take a paid day off. And he indicated that he did take some of those. And he also indicated that I would be denied if the needs of the railroad did not allow me to, to or did he specifically in any instance, ask for paid day off to attend medical appointments and were and was refused? He he would ask for time off. That's, you know, in other words, we the way it works, it's not a specific specific request for time off for medical. The request is, hey, when we call you, we need you there. And he then responds and says, I want to lay off. They say, you know, no, we can't give you that time off. Well, what he do, you know, what he would do first to say, I want my take a paid day off, we granted if we could. But if we couldn't, we deny it, then he would lay off and say, I'm not I'm not able to come today. I'd like to spend just a little time on the FMLA issue that in that particular issue, the judge correctly responded to the jury's question as he did, there was one issue in this case. And that was simply the jury was asked to decide, has Union Pacific carried its burden of proving that it would have terminated Mr. Dancy, regardless of his use or attempted use of the FMLA. That's the sole issue. And the jury was also told that it is unlawful for any employer to interfere with restrain or deny the exercise or the attempt to exercise any right right by the FMLA. In this particular circumstance, there was no objection to those instructions. The judge responded and said, you have the information in your instructions, just look at them as a whole. And that's what the jury did and came up with their their determination that we had met our burden. Well, did the instructions tell the jury that he was eligible for FMLA benefits? Judge, the instructions did not say that he was eligible for FMLA benefits, but it was in record evidence that he had at the trial that he did not. He didn't have FMLA up until a certain point, but that it was granted on April 10th prior to his termination. Had the district court made that legal ruling prior to the submission of the case to the jury? He had in essence what the reason he instructed as he did judge is because he made the determination that the Prime Fish case had been met, that he had the the stand. And was the jury informed of those findings, those legal conclusions that the court had determined? No, the jury is told that it did that the about the question, the only question that it needed to decide. And in this sense, Judge, the essentially the instruction presumed that he had made a request for FMLA or attempt to use FMLA. And so that's established. It's really no different than the same decision defense on the jury. No, it was established by the fact that that's the whole point of their question. Judge, they knew that his use that by the instruction that the use of FMLA or the attempted use of FMLA was protected. And so by very definition, the attempt to use FMLA, it means that if you're trying to use it, whether you have it or not, that you have the right to you should be free from termination in those once they were asked the question, he do you conclude that because he asked for FMLA either to attempt to use it, or to actually use his FMLA rights? Do you think he would have been fired regardless? And the answer to that question was yes, we think regardless of his attempt to use FMLA, or actual use of FMLA, that that did not affect the outcome. He was fired regardless. Thank you gone over my time, Your Honor, but I would be very glad to answer any other questions. Thank you. Thank you. Do we have rebuttal time? No, we don't. Okay. Thank you both for your arguments this morning. The case is submitted.